IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FELICIA KIM LAMBERT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. ____________ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SOLEO HEALTH INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Felicia Kim Lambert, by counsel, files this Complaint against Defendant Soleo Health Inc. and alleges as follows:

## NATURE OF THE ACTION

1. Ms. Lambert brings this action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (“ADEA”); the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (“FMLA”); and Section 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1140 (“ERISA”).

2. Ms. Lambert has worked as a nurse since 1981.

3. Soleo employed Ms. Lambert as a registered nurse for more than six years.

4. Soleo fired Ms. Lambert on February 20, 2026, when she was 64 years old.

5. Soleo fired Ms. Lambert about nine weeks after she complained to Soleo’s Human Resources department that she was being treated less favorably than the younger nurses on her team.

6. Soleo fired Ms. Lambert weeks after it refused her request for leave to care for her husband, who was suffering from liver disease and who died on March 14, 2026.

7. Soleo fired Ms. Lambert weeks after a claim of more than $11,000 was made under Soleo's employee health plan for her husband's prescription medication.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Ms. Lambert's claims arise under the laws of the United States.

9. This Court also has jurisdiction over Ms. Lambert's ADEA claims under 29 U.S.C. § 626(c)(1), over her FMLA claims under 29 U.S.C. § 2617(a)(2), and over her ERISA claim under 29 U.S.C. § 1132(e)(1) and (f).

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Ms. Lambert's claims occurred in Mobile County, Alabama, which lies within this District.

11. Venue is also proper in this District for Ms. Lambert's ERISA claim under 29 U.S.C. § 1132(e)(2) because the violation took place in this District.

12. Assignment to the Southern Division is proper because the events giving rise to this action occurred in Mobile County, Alabama.

## PARTIES

13. Plaintiff Felicia Kim Lambert is an adult individual who resides in Satsuma, Mobile County, Alabama.

14. At all times relevant to this Complaint, Ms. Lambert was more than 40 years old.

15. Defendant Soleo Health Inc. ("Soleo") is a **foreign** corporation with its principal office at 2801 Network Boulevard, Suite 505, Frisco, Texas 75034.

16. Soleo provides specialty pharmacy and home and ambulatory infusion therapy services.

17. Soleo operates a branch in Mobile County, Alabama, where Ms. Lambert worked (the "Mobile branch").

18. Soleo operates approximately 45 locations in the United States.

19. Soleo is engaged in an industry affecting commerce.

20. Soleo employed 20 or more employees for each working day in each of 20 or more calendar weeks in 2025 and in 2026.

21. Soleo is an "employer" as defined by the ADEA, 29 U.S.C. § 630(b).

22. Soleo employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2025 and in 2026.

23. Soleo is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

24. Soleo sponsored and maintained a group health plan for its employees and their dependents (the "Plan").

25. The Plan is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1).

26. Ms. Lambert was a "participant" in the Plan within the meaning of ERISA, 29 U.S.C. § 1002(7).

27. Ms. Lambert's husband was enrolled in the Plan as her covered dependent.

## ADMINISTRATIVE EXHAUSTION

28. On or about July 31, 2026, Ms. Lambert filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 425-2026-01824.

29. Ms. Lambert filed her charge within 180 days after Soleo terminated her employment on February 20, 2026.

30. Ms. Lambert's charge alleged that Soleo discriminated against her because of her age and retaliated against her.

31. On August 31, 2026, the EEOC issued Ms. Lambert a Notice of Right to Sue.

32. Ms. Lambert has filed this action within 90 days after the EEOC issued the Notice of Right to Sue.

33. More than 60 days passed after Ms. Lambert filed her charge before she filed this action, as 29 U.S.C. § 626(d)(1) requires.

34. A true and correct copy of Ms. Lambert's charge is attached as Exhibit A.

35. A true and correct copy of the Notice of Right to Sue is attached as Exhibit B.

36. Ms. Lambert has satisfied all administrative prerequisites to her ADEA claims.

37. The FMLA does not require administrative exhaustion.

38. No procedure under the Plan provides a remedy for an employer's interference with a participant's attainment of Plan rights by terminating the participant's employment, and any attempt to exhaust such a claim through the Plan would have been futile.

## FACTUAL ALLEGATIONS

### A. Ms. Lambert's Employment with Soleo

39. Soleo hired Ms. Lambert as a Registered Nurse in January 2020.

40. As a Registered Nurse, Ms. Lambert administered infusion therapy to Soleo's patients in the Mobile branch's infusion suites and in patients' homes.

41. Soleo paid Ms. Lambert approximately $79,600 per year.

42. Ms. Lambert worked full-time for Soleo.

43. Ms. Lambert worked more than 1,250 hours for Soleo during the 12 months before January 2026

44. Ms. Lambert performed her job well.

45. Ms. Lambert's patients regularly expressed satisfaction with the care she provided.

46. Before Soleo fired her, Ms. Lambert had never been fired from any job in more than 40 years of nursing.

**B. <u>Soleo's Younger Managers and Nurses</u>**

47. In 2025 and 2026, Jennifer Rensink was the Nurse Manager over the Mobile branch.

48. Ms. Rensink also managed Soleo's Birmingham office.

49. Ms. Rensink was approximately 30 years old.

50. Erin Haverfield was a Soleo manager who supervised Ms. Lambert.

51. Ms. Haverfield was in her late twenties.

52. The other nurses who worked with Ms. Lambert at the Mobile branch, including Erika Demouy and Jennifer Mong, were between approximately 30 and 40 years old.

53. Ms. Lambert was approximately 25 years older than the other nurses on her team.

54. Soleo assigned Ms. Lambert a heavier base patient load than it assigned to the younger nurses.

55. The younger nurses regularly left work early for personal matters, such as oil changes, appointments, and their children's swim classes.

56. Soleo changed Ms. Lambert's schedule, often without notice, to cover for the younger nurses' schedule preferences.

57. The younger nurses took lunch together and left Ms. Lambert alone in the infusion suites to care for their patients while they were gone.

58. The younger nurses used profanity and gossiped about patients at work.

59. Soleo did not discipline the younger nurses for leaving early, using profanity, or gossiping about patients.

### C. <u>The December 17, 2025 Meeting</u>

60. On December 17, 2025, Ms. Rensink met with Ms. Lambert.

61. During the meeting, Ms. Rensink told Ms. Lambert that she was "not a team player."

62. During the meeting, Ms. Rensink accused Ms. Lambert of being disrespectful to coworkers.

63. Ms. Rensink cited a text message in which Ms. Lambert had replied "whatever" to a coworker while trying to schedule a patient appointment.

64. Ms. Rensink accused Ms. Lambert of cursing at a coworker.

65. Ms. Lambert denied cursing at a coworker.

66. On information and belief, Soleo did not investigate whether Ms. Lambert had cursed at a coworker before accusing her of doing so.

67. During the meeting, Ms. Rensink told Ms. Lambert that Soleo had already hired another nurse.

68. The nurse Soleo had hired was Meghan Blaise.

69. Ms. Blaise is in her forties.

70. Ms. Blaise is substantially younger than Ms. Lambert.

71. On December 17, 2025, after the meeting, Ms. Lambert sent Ms. Rensink a text message stating that she felt she was working in a hostile work environment.

72. On December 18, 2025, Ms. Rensink sent Ms. Lambert an email purporting to summarize the December 17 meeting.

73. The December 18 email contained statements that Ms. Rensink had not made during the meeting.

74. The December 18 email warned Ms. Lambert that a failure to demonstrate improvement could result in termination.

75. Ms. Rensink did not mention possible termination during the December 17 meeting.

76. The December 18 email directed Ms. Lambert to contact Human Resources if any part of the summary was inaccurate.

**D. <u>Ms. Lambert's December 19, 2025 Complaint to Human Resources</u>**

77. On December 19, 2025, Ms. Lambert complained to Emma Katchens of Soleo's Human Resources department.

78. Ms. Lambert made her complaint to Ms. Katchens orally.

79. Ms. Lambert told Ms. Katchens that the December 18 email was inaccurate.

80. Ms. Lambert told Ms. Katchens that Soleo was treating her differently than the other nurses.

81. Ms. Lambert told Ms. Katchens that Soleo changed her schedule without notice to accommodate the schedule preferences of the younger nurses.

82. Ms. Lambert told Ms. Katchens that she was assigned more hours than the other nurses.

83. Ms. Lambert told Ms. Katchens that the other nurses were all between 30 and 40 years old, that she was approximately 25 years older than them, and that she felt targeted.

84. On information and belief, Soleo did not investigate Ms. Lambert's complaint.

**E. <u>The January 2, 2026 Final Warning</u>**

85. On January 2, 2026, two weeks after Ms. Lambert's complaint to Human Resources, Soleo issued Ms. Lambert a written final warning.

86. The final warning included accusations that had not been raised in the December 17, 2025, meeting.

87. Every incident described in the final warning occurred before December 17, 2025.

88. The final warning stated that Soleo had previously discussed the cited concerns with Ms. Lambert.

89. Soleo had not previously discussed those concerns with Ms. Lambert.

**F. <u>Soleo Denies Ms. Lambert Leave to Care for Her Husband</u>**

90. Ms. Lambert's husband suffered from non-alcoholic cirrhosis of the liver.

91. Ms. Lambert's husband's liver disease required continuing treatment by a health care provider

92. Ms. Lambert's husband's liver disease was a serious health condition.

93. In January 2026 Ms. Lambert asked Soleo for time off to care for her husband.

94. Ms. Lambert told Soleo that she needed the time off because her husband was ill with liver disease.

95. Soleo denied Ms. Lambert's request.

96. Soleo told Ms. Lambert that she could not take FMLA leave because Soleo had no more than 50 employees.

97. On information and belief, Soleo employed 50 or more employees within 75 miles of the worksite to which Ms. Lambert reported, counting the employees who reported to or were assigned to the Mobile branch, including field and home-based employees.

98. Soleo did not provide Ms. Lambert with written notice of her FMLA eligibility or of her rights and responsibilities under the FMLA**.**

99. Because Soleo denied her request, Ms. Lambert was unable to take leave to care for her husband during his illness.

100. Ms. Lambert's husband died on March 14, 2026, three weeks after Soleo fired her.

**G. <u>The Health Plan Claim for Ms. Lambert's Husband</u>**

101. Ms. Lambert's husband required prescription medication to treat his liver disease.

102. On or about January 22, 2026 a claim of approximately $11,000 for one of his prescriptions was submitted under the Plan.

103. Ms. Lambert's husband's liver disease was expected to require continuing, costly treatment covered by the Plan.

104. Soleo knew of Ms. Lambert's husband's liver disease because Ms. Lambert told Soleo about it when she requested leave.

105. On information and belief, Soleo knew of the cost of Ms. Lambert's husband's care under the Plan.

**H. <u>Soleo Fires Ms. Lambert</u>**

106. In February 2026, before her termination, Soleo blocked Ms. Lambert's access to her performance evaluation.

107. Soleo also blocked Ms. Lambert's access to its Paylocity payroll system.

108. On February 20, 2026, Ms. Haverfield fired Ms. Lambert.

109. Soleo gave Ms. Lambert three reasons for firing her.

110. First, Soleo claimed Ms. Lambert was insubordinate because she asked a pharmacist a question about the infusion rate for a patient's infusion.

111. Asking a pharmacist a question about a patient's infusion is ordinary nursing practice that protects patient safety.

112. On information and belief, Soleo did not discipline the younger nurses when they asked questions about a patient's infusion.

113. Second, Soleo faulted Ms. Lambert because a patient came to the office for an infusion that had been scheduled to take place in the patient's home.

114. Ms. Lambert did not schedule that patient's appointment.

115. Patient confusion about the location and time of infusion appointments was common at the Mobile branch and affected all of the nurses.

116. On information and belief, Soleo did not discipline the younger nurses when patients were confused about the location or time of their appointments.

117. Third, Soleo faulted Ms. Lambert because she told a coworker that she was leaving at 4:00 p.m. on a day when she had not been able to take a lunch break.

118. Soleo did not approve overtime for Ms. Lambert that day.

119. It was an understood practice at the Mobile branch that a nurse who could not take a lunch break would leave early.

120. The younger nurses left early when they missed a lunch break without being disciplined.

121. All three incidents Soleo cited occurred during the week Soleo fired Ms. Lambert.

122. Soleo's stated reasons for firing Ms. Lambert were false.

123. Soleo's stated reasons for firing Ms. Lambert were a pretext.

124. On information and belief, Soleo replaced Ms. Lambert with Ms. Blaise or another substantially younger nurse.

125. Soleo fired Ms. Lambert about nine weeks after her complaint to Human Resources.

126. Soleo fired Ms. Lambert within weeks after she requested leave to care for her husband.

127. Soleo fired Ms. Lambert within weeks after the approximately $11,000 Plan claim for her husband's medication.

128. When Soleo fired Ms. Lambert, Ms. Lambert and her husband lost their coverage under the Plan.

129. Soleo maintains a Human Resources department.

130. Soleo knew that the ADEA prohibits an employer from firing an employee because of her age and from retaliating against an employee for opposing age discrimination.

131. Soleo knew that the FMLA entitles eligible employees to leave to care for a spouse with a serious health condition.

132. As a result of Soleo's conduct, Ms. Lambert has lost wages, employment benefits including health insurance, and other compensation.

133. As a result of Soleo's conduct, Ms. Lambert lost the opportunity to care for her husband during the final weeks of his life.

## COUNT I

## AGE DISCRIMINATION — ADEA, 29 U.S.C. § 623(A)(1)

134. Ms. Lambert incorporates by reference paragraphs 1 through 133 of this Complaint.

135. The ADEA makes it unlawful for an employer to discharge an individual because of the individual's age. 29 U.S.C. § 623(a)(1).

136. Ms. Lambert was 64 years old when Soleo fired her, and she is within the class protected by the ADEA. 29 U.S.C. § 631(a).

137. Ms. Lambert was qualified for her position: she had worked as a nurse since 1981, had worked for Soleo as a Registered Nurse for more than six years, and her patients regularly expressed satisfaction with her care.

138. Soleo subjected Ms. Lambert to an adverse employment action when Ms. Haverfield fired her on February 20, 2026.

139. Soleo treated substantially younger nurses more favorably: it assigned Ms. Lambert a heavier base patient load than the younger nurses, changed her schedule to accommodate the younger nurses' preferences, and did not discipline the younger nurses for leaving early after a missed lunch or for patient scheduling confusion, the same conduct it cited to fire Ms. Lambert.

140. Before firing Ms. Lambert, Ms. Rensink told her on December 17, 2025, that Soleo had already hired another nurse, Ms. Blaise, who is in her forties.

141. On information and belief, Soleo replaced Ms. Lambert with Ms. Blaise or another substantially younger nurse.

142. Soleo's stated reasons for firing Ms. Lambert — asking a pharmacist about a patient's infusion, a patient's confusion about an appointment location Ms. Lambert did not schedule, and leaving at 4:00 p.m. after missing lunch without approved overtime — were false and/or a pretext for age discrimination.

143. But for Ms. Lambert's age, Soleo would not have fired her.

144. Soleo's violation was willful: Soleo knew that the ADEA prohibits age-based discharge and, through its managers and Human Resources department, fired Ms. Lambert anyway after she raised her unequal treatment compared with the younger nurses.

145. As a direct result, Ms. Lambert has lost wages, benefits, and other compensation.

**COUNT II**

**<u>RETALIATION — ADEA, 29 U.S.C. § 623(D)</u>**

146. Ms. Lambert incorporates by reference paragraphs 1 through 133 of this Complaint.

147. The ADEA makes it unlawful for an employer to discriminate against an employee because she has opposed any practice made unlawful by the ADEA. 29 U.S.C. § 623(d).

148. Ms. Lambert engaged in protected activity on December 19, 2025, when she complained to Emma Katchens of Soleo's Human Resources department that Soleo was treating her differently than the other nurses, who were all between 30 and 40 years old, and was

changing her schedule without notice to accommodate the schedule preferences of the younger nurses.

149. Ms. Lambert held a good-faith, objectively reasonable belief that Soleo was treating her less favorably because of her age.

150. Soleo knew of Ms. Lambert's complaint because she made it directly to Soleo's Human Resources department, as Ms. Rensink's December 18, 2025, email had directed.

151. Two weeks after Ms. Lambert's complaint, on January 2, 2026, Soleo issued her a written final warning based on incidents that predated December 17, 2025, and on prior discussions that had not occurred.

152. About nine weeks after Ms. Lambert's complaint, on February 20, 2026, Soleo fired her.

153. Soleo's firing of Ms. Lambert would dissuade a reasonable worker from complaining of age discrimination.

154. Soleo's stated reasons for firing Ms. Lambert were false and a pretext for retaliation.

155. But for Ms. Lambert's complaint, Soleo would not have fired her.

156. Soleo's violation was willful: Soleo knew that the ADEA prohibits retaliation and fired Ms. Lambert after its Human Resources department received her complaint.

157. As a direct result, Ms. Lambert has lost wages, benefits, and other compensation.

**COUNT III**

**<u>INTERFERENCE — FMLA, 29 U.S.C. § 2615(A)(1)</u>**

158. Ms. Lambert incorporates by reference paragraphs 1 through 133 of this Complaint.

159. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any FMLA right. 29 U.S.C. § 2615(a)(1).

160. Soleo is an employer covered by the FMLA because it employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2025 and 2026. 29 U.S.C. § 2611(4)(A).

161. Ms. Lambert was an eligible employee: she had worked for Soleo for more than 12 months, had worked more than 1,250 hours in the 12 months before January 2026, and, on information and belief, Soleo employed 50 or more employees within 75 miles of the worksite to which she reported. 29 U.S.C. § 2611(2).

162. Ms. Lambert was entitled to FMLA leave to care for her husband because his non-alcoholic cirrhosis of the liver was a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

163. Ms. Lambert gave Soleo notice of her need for leave when, in January 2026, she asked for time off to care for her husband and told Soleo that he was ill with liver disease.

164. Soleo denied Ms. Lambert the FMLA leave to which she was entitled, telling her that she could not take FMLA leave because Soleo had no more than 50 employees.

165. Soleo further interfered with Ms. Lambert's FMLA rights by firing her on February 20, 2026, ending any further opportunity for her to take FMLA leave to care for her husband.

166. Ms. Lambert was prejudiced by Soleo's interference: she was unable to take leave to care for her husband during his illness, lost her employment and wages, and lost her and her husband's health coverage weeks before his death on March 14, 2026.

167. Soleo did not act in good faith or with reasonable grounds for believing its conduct complied with the FMLA.

## COUNT IV

## RETALIATION — FMLA, 29 U.S.C. § 2615(A)(2)

168. Ms. Lambert incorporates by reference paragraphs 1 through 133 of this Complaint.

169. The FMLA makes it unlawful for an employer to discharge or otherwise discriminate against an employee for exercising or attempting to exercise FMLA rights. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c).

170. Ms. Lambert engaged in statutorily protected activity in January 2026 when she requested leave to care for her husband, who was ill with liver disease.

171. Soleo knew of Ms. Lambert's request because she made it to Soleo and Soleo denied it.

172. Soleo fired Ms. Lambert on February 20, 2026, within weeks after her leave request.

173. Soleo's stated reasons for firing Ms. Lambert were false and a pretext for retaliation.

174. Soleo fired Ms. Lambert because she attempted to exercise her FMLA rights.

175. Soleo did not act in good faith or with reasonable grounds for believing its conduct complied with the FMLA.

176. As a direct result, Ms. Lambert has lost wages, benefits, and other compensation.

## COUNT V

## INTERFERENCE WITH PLAN BENEFITS — ERISA § 510, 29 U.S.C. § 1140

177. Ms. Lambert incorporates by reference paragraphs 1 through 133 of this Complaint.

178. ERISA § 510 makes it unlawful for an employer to discharge a participant in an employee benefit plan for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan. 29 U.S.C. § 1140.

179. The Plan is an employee welfare benefit plan, Ms. Lambert was a participant in the Plan, and her husband was enrolled in the Plan as her covered dependent.

180. Ms. Lambert's husband suffered from liver disease that required continuing, costly treatment covered by the Plan, including a prescription for which a claim of approximately $11,000 was submitted on or about January 22, 2026.

181. Soleo knew of Ms. Lambert's husband's liver disease because she told Soleo about it when she requested leave in January 2026.

182. Soleo fired Ms. Lambert on February 20, 2026, within weeks after that claim, which ended her and her husband's coverage under the Plan.

183. Soleo's stated reasons for firing Ms. Lambert were false and a pretext.

184. A motivating purpose of Soleo's decision to fire Ms. Lambert was to interfere with her attainment of further benefits under the Plan for her husband's continuing medical treatment.

185. Ms. Lambert is entitled to appropriate equitable relief to redress Soleo's violation of § 510 under 29 U.S.C. § 1132(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Ms. Lambert respectfully requests that the Court enter judgment in her favor and against Soleo and award the following relief:

**Relief to Be Determined by the Jury (Counts I–IV)**

a. On Counts I and II (ADEA): back pay and lost benefits from February 20, 2026 through judgment, compensatory damages to include emotional distress damages, and an additional equal amount as liquidated damages for Soleo's willful violations, 29 U.S.C. § 626(b);

b. On Counts III and IV (FMLA): wages, salary, employment benefits, and other compensation denied or lost, interest on those amounts, and an additional equal amount as liquidated damages, 29 U.S.C. § 2617(a)(1)(A);

**Relief to Be Determined by the Court**

c. A declaration that Soleo violated the ADEA, the FMLA, and ERISA § 510;

d. Reinstatement to Ms. Lambert's former position with full seniority and benefits or, if reinstatement is not feasible, front pay, 29 U.S.C. §§ 626(b), 2617(a)(1)(B);

e. On Count V (ERISA § 510): appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including reinstatement, restoration of her Plan participation, and make-whole equitable monetary relief for the benefits lost because of Soleo's interference;

f. An injunction prohibiting Soleo from further violating the ADEA, the FMLA, and ERISA § 510 with respect to Ms. Lambert;

g. Prejudgment and post-judgment interest;

h. Reasonable attorneys' fees, expert fees, and costs, 29 U.S.C. §§ 626(b), 2617(a)(3), 1132(g)(1); and

i. Such other relief as the Court finds just.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Ms. Lambert demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Patricia A. Gill
Patricia A. Gill (ASB-0780-I66P)
Attorney for Plaintiff

OF COUNSEL:
THE WORKERS' FIRM, LLC
2 North 20th Street, Suite 900
Birmingham, Alabama 35203
Telephone: (205) 208-8022, ext. 806
Facsimile: (205) 631-4130
trish@theworkersfirm.com

## <u>DEFENDANT TO BE SERVED BY CERTIFIED MAIL OR PROCESS SERVER</u>

Soleo Health Inc.
c/o Registered Agent Corporation Service Company Inc.
641 South Lawrence Street
Montgomery, AL 36104

## EXHIBITS

Exhibit A — EEOC Charge of Discrimination No. 425-2026-01824
Exhibit B — EEOC Notice of Right to Sue issued August 31, 2026